**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **COLUMBUS CARE AND REHABILITATION CENTER, LLC,** *et al.*, | * | |
| Plaintiffs, | * | Case No.: GJH-22-421 |
| v. | * | |
| **CONGRESSIONAL BANK,** a/k/a **FORBRIGHT BANK,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs Columbus Care and Rehabilitation Center, LLC; Cozad Care and Rehabilitation Center, LLC; Franklin Care and Rehabilitation Center, LLC; Nebraska City Care and Rehabilitation Center, LLC; Norfolk Care and Rehabilitation Center, LLC; Omaha Metro Care and Rehabilitation Center, LLC; Sorensen Care and Rehabilitation Center, LLC; O'Neill Care and Rehabilitation Center, LLC; Plattsmouth Care and Rehabilitation Center, LLC; Schuyler Care and Rehabilitation Center, LLC; Tekamah Care and Rehabilitation Center, LLC; Wausa Care and Rehabilitation Center, LLC; Grand Island Park Place Care and Rehabilitation Center, LLC; Neligh Care and Rehabilitation Center, LLC; Broken Bow Care and Rehabilitation Center, LLC; Scottsbluff Care and Rehabilitation Center, LLC; Sidney Care and Rehabilitation Center, LLC; Clarkson Care and Rehabilitation Center, LLC; Valhaven Care and Rehabilitation Center, LLC; Lansing Care and Rehabilitation Center, LLC; Chase County Care and Rehabilitation Center, LLC; Downs Care and Rehabilitation Center, LLC; Spring Hill Care and Rehabilitation Center, LLC; El Dorado Care and Rehabilitation Center, LLC; Neodesha Care and Rehabilitation

1

Center, LLC; Wellington Care and Rehabilitation Center, LLC; Wilson Care and Rehabilitation Center, LLC; Parkway Care and Rehabilitation Center, LLC; Kaw River Care and Rehabilitation Center, LLC; Edwardsville Care and Rehabilitation Center, LLC; Wakefield Care and Rehabilitation Center, LLC; Eskridge Care and Rehabilitation Center, LLC; Pittsburg Care and Rehabilitation Center, LLC; Wichita Care and Rehabilitation Center, LLC, and Joseph Schwartz bring this civil action against Defendants Congressional Bank, a/k/a Forbright Bank, and Amy Heller, in her corporate capacity, for breach of contract and fraudulent misrepresentation. ECF No. 20. Pending before the Court is Defendants' Motion to Dismiss Amended Complaint. ECF No. 21. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion is granted.

I. **BACKGROUND**[1]

Plaintiffs consist of 34 limited liability companies ("LLC") based in Nebraska and Kansas ("Corporate Plaintiffs"), and the sole member of each LLC, Plaintiff Joseph Schwartz.[2] ECF No. 20 ¶¶ 1–35. Defendant Congressional Bank a/k/a Forbright Bank ("Congressional") is a Maryland-chartered commercial bank and citizen of Maryland. *Id.* ¶ 36. Defendant Amy Heller, named in her corporate capacity, is an executive at Congressional Bank and a citizen of Maryland. *Id.* ¶ 37.

On or about October 13, 2016, Corporate Plaintiffs based in Nebraska entered into an agreement for a revolving line of credit with Congressional worth $6 million. *Id.* ¶ 43. On or

---

[1] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Amended Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[2] The Amended Complaint identifies all Corporate Plaintiffs as Delaware LLCs. ECF No. 20 ¶¶ 1–34. However, Defendants note that supporting documentation provided by Plaintiffs identifies Corporate Plaintiffs as being Nebraska or Kansas LLCs, respectively. ECF No. 21 ¶ 1.

about November 2, 2016, Corporate Plaintiffs based in Kansas entered into an agreement with Congressional for a revolving line of credit worth $12 million. *Id.* ¶ 44. On or around the same time, Plaintiff Schwartz signed on as guarantor for each of the revolving credit lines. *Id.* ¶ 46. Pursuant to the Accounts Agreement and the Loan and Security Agreement, Corporate Plaintiffs were to place all payments for commercial and government receivables into accounts with Congressional, which were to be periodically "swept" and credited against the balance on the revolving facility.[3] *See* ECF No. 20-1; ECF No. 20-2.

On February 22, 2018, Defendants sent several letters to Plaintiffs giving notice that they were in default on their loans. *Id.* ¶ 47. On February 27, 2018, Defendants sent several additional letters to Plaintiffs. *Id.* ¶ 48. Plaintiffs allege that the February 27 letters terminated Corporate Plaintiffs' agreements with the bank "and indicated that if any accounts had a balance on March 27, 2018, all funds would be swept by Congressional." *Id.* After receiving the letters, Plaintiffs sought to negotiate with Defendant Heller to reopen the lines of credit. *Id.* ¶ 49. During this same period, Plaintiffs were advanced $3.5 million by the State of Nebraska to fund payroll at Corporate Plaintiffs' facilities. *Id.* ¶ 50. On or about March 21, 2018, Plaintiffs allege that Congressional, at the direction of Heller, "intentionally and wrongfully" swept all funds in Plaintiffs' accounts, including the payroll advance funds provided by the State of Nebraska. *Id.* ¶ 51. Plaintiffs allege these actions were "in direct contradiction" with the terms set forth in the February 27 letter and representations made by Heller that the accounts would not be swept until March 27, 2018. *Id.* Plaintiffs allege that they brought the issue to the attention of Heller, but "she refused to release the funds to satisfy Plaintiffs' payroll obligations." *Id.* ¶ 52. On March 23, 2018, Corporate Plaintiffs failed to make payroll and notified their landlord that they would be

---

[3] Precisely how and when these "sweeps" would occur is disputed by the parties. *See infra* III.B.

unable to make further payments. *Id.* ¶ 53. Corporate Plaintiffs were then placed in consensual receiverships with the States of Nebraska and Kansas on March 23, 2018, and March 28, 2018, respectively.[4] *Id.* ¶ 54. Corporate Plaintiffs remained in receivership with the State of Nebraska until "the middle" of 2019, and with the State of Kansas until September 2019. *Id.* ¶¶ 55–56. Plaintiffs allege that they did not have "access to the books and records of the facilities to determine the wide-spread damage caused by Congressional's wrongful actions" until the receiverships were concluded. *Id.*

On February 20, 2022, Plaintiffs filed a Complaint in this Court. ECF No. 1. On April 27, 2022, Plaintiffs filed an Amended Complaint. ECF No. 20. On May 26, 2022, Defendants filed a Motion to Dismiss Amended Complaint. ECF No. 21. Plaintiffs subsequently responded, ECF No. 22, and Defendants replied, ECF No. 23.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss invoking Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences

---

[4] Corporate Plaintiffs were also placed into receivership in South Dakota. ECF No. 20 ¶ 54.

4

[from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours*, 637 F.3d at 440 (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

"Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). The Court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. "To be 'integral,' a document must be one 'that by its very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Brennan*, 361 F. Supp. 3d at 502 (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point*, LLC, 794 F. Supp. 2d 602, 611 (D. Md. 2011)). Further, where a plaintiff attaches an exhibit to a complaint, such exhibits are incorporated into the complaint, and "in the event of a conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) … the exhibit prevails." *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

To state a claim sounding in fraud, as Plaintiffs do here, a party must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires "that a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249–50 (D. Md. 2000); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (describing obligation to provide the "who, what, when, where, and how" of the fraud claim). "The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all the facts are learned only after discovery; and to safeguard the defendant's reputation." *Van Buren v. Walmart, Inc.*, No. CV DKC 19-0911, 2020 WL 1064823, at *2 (D. Md. Mar. 5, 2020), *aff'd*, 855 F. App'x 156 (4th Cir. 2021) (citation omitted).

### III.  DISCUSSION

#### A. Statute of Limitations

Defendants first argue that Plaintiffs' claims, which were filed more than three years after funds were swept from Corporate Plaintiffs' accounts, are time-barred. Under Maryland law, civil claims must be filed within three years from the date on which the claims accrue. Md. Code Ann., Cts. & Jud. Proc. § 5-101. A court may grant a motion to dismiss on statute of limitations grounds "only 'if the time bar is apparent on the face of the complaint.'" *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).

First, Plaintiffs assert that the breach of contract claims are timely because they "did not have the capacity to bring a lawsuit against Defendants during the pendency of the Nebraska and

Kansas receivership proceedings." ECF No. 22 at 6.[5] Generally, claims for breach of contract are held to the three-year limitation provided by law, and a claim "[begins] to run when the cause of action for breach of contract accrued." *See Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 648 (1999). Here, Plaintiffs assert that the funds sweep occurred on March 21, 2018, which is thus the date of the alleged breach of contract. ECF No. 20 ¶ 51. Plaintiffs notified Defendant Heller of the breach, and Corporate Plaintiffs were placed into receivership with the State of Nebraska on March 23, 2018, and with the State Kansas on March 28, 2018. *Id.* ¶¶ 52, 55, 56. Corporate Plaintiffs emerged from receivership in "the middle" of 2019 and September 2019, respectively. *Id.* ¶¶ 55–56. In their Response to Defendants' Motion to Dismiss, Plaintiffs argue that they did not "gain[ ] authority and capacity to bring suit" until the receiverships had concluded. ECF No. 22 at 6.

However, while Plaintiffs argue that placement in receivership *should* toll the statute of limitations, they have not cited any legal authority supporting this assertion. Further, the limited case law identified by the Court appears inapposite. *See Rx.com v. Medco Health Sols., Inc.*, 322 F. App'x 394, 399 n.1 (5th Cir. 2009) (holding that pendency of a receivership was not a valid reason supporting equitable tolling). Accordingly, Plaintiffs have failed to identify any reason that the date of the alleged breach of contract is not the appropriate date of accrual in this matter.

Second, Plaintiffs argue that the fraud claims should be tolled because Plaintiffs were unable to investigate the extent of the alleged fraud perpetuated against it until the receiverships concluded. ECF No. 22 at 6–7. In Maryland, fraud claims are typically held to the same three-year limitation, albeit pursuant to the "discovery rule." *See, e.g.*, *O'Hara v. Kovens*, 305 Md. 280, 286 (1986). Under the discovery rule, "a plaintiff's cause of action accrues when the

---

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010). The standard may be satisfied through actual knowledge or what is known as "inquiry notice." *See State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 556 (D. Md. 2019). Being on inquiry notice "means having knowledge of circumstances which would cause a reasonable person in the position of the plaintiffs to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged cause of action." *Green v. Pro Football, Inc.*, 31 F. Supp. 3d 714, 722 (D. Md. 2014) (citation and internal marks omitted).

Here, as noted above, Plaintiffs have alleged that the funds sweep occurred on March 21, 2018. ECF No. 20 ¶ 51. Plaintiffs have also asserted that they informed Defendant Heller of the breach soon after the sweep occurred. *Id.* ¶ 52. As such, "the harm to petitioners" was "apparent," such that "a reasonably prudent person would have begun investigating the cause of the harm" at this time. *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 449 (2000). Further, while Plaintiffs assert that they were precluded from investigating Defendants' "wrongful, intentional, and fraudulent actions" until after the receiverships had ended, they have failed to provide any explanation for how the fact of receivership prevented an investigation on the companies' behalf. ECF No. 20 ¶ 57.

Thus, the Court finds the breach of contract and fraudulent misrepresentation claims to be barred under Maryland's three-year statute of limitations.

**B. Sufficiency of Plaintiff's Claims**

Even if Plaintiffs could establish that their claims were not time-barred, the Court does not find that Plaintiff's allegations are adequate to survive a motion to dismiss for the reasons that follow.

### 1. Breach of Contract

Plaintiffs allege that Defendants swept the funds advanced to Plaintiffs by the State of Nebraska to meet payroll, despite Plaintiffs' notice that the funds were not appropriate for sweeping and Plaintiffs' request that the funds be returned. ECF No. 20 ¶¶ 51–52. Thus, they argue, Defendants' actions contradicted the agreements entered into by the parties. *See, e.g.*, *id.* ¶¶ 61–62.

Defendants respond that the agreements specified that sweeps were to occur daily; that Plaintiffs were not owed notice ahead of daily sweeps; and that the agreements did not carve out certain types of funds as being immune from being swept. *See* ECF No. 21 at 11–12; ECF No. 23 at 2–3. As such, Defendants assert that they did nothing but follow the contractual provisions agreed upon, and that no breach occurred. *Id.*

To bring a breach of contract claim, a plaintiff must allege facts showing that (1) the defendant owed plaintiff a contractual obligation and (2) the defendant breached that obligation. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (Md. 2001). A claim for breach of contract "must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *Dern v. Liberty Mut. Ins. Co.*, No. 15-cv-1737-GJH, 2015 WL 8665329, at *4 (D. Md. Dec. 11, 2015) (quoting *RRC Ne., LLC v. BAA Md, Inc.*, 413 Md. 638, 655 (Md. 2010)). As noted above, a court may look to documents attached to a complaint and motion to dismiss as long as the documents are integral and authentic. *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Further, an exhibit will prevail if it is in conflict with the bare allegations provided in a complaint. *Fayetteville*, 936 F.2d at 1465.

Here, the Court first looks to the language of the Accounts Agreement and the Loan and Security Agreement entered into by the parties, as provided by Plaintiffs. *See* ECF No. 20-1; ECF No. 20-2. The agreements confer a revolving line of credit in exchange for all of the payments on commercial and government receivables owed to Corporate Plaintiffs. *See* ECF No. 22 at 7; ECF No. 20-2. As noted above, Plaintiff Schwartz signed on as guarantor for the lines of credit. ECF No. 20 ¶ 46.

Paragraph 2 of the Accounts Agreement establishes a Commercial Account, through which "checks, drafts, or other orders for the payment of money and other forms of collections from commercial payors" and "electronic funds transfers" are received for commercial receivables owed to Plaintiffs. ECF No. 20-2 at 1. The Accounts Agreement includes "standing irrevocable instructions" that the Bank will transfer funds at the beginning of each business day to be applied as a credit against Plaintiffs' loan obligations. *Id.*

Paragraph 3 creates a "Governmental Account" that receives "checks, drafts, and other orders" and "electronic funds transfers" from government payors for receivables owed to Plaintiffs. *Id.* at 2. The Account Agreement contains for the Governmental Account "standing revocable instructions" calling for the Bank to transfer and apply any funds at the end of the business day against the line of credit, if the funds are "reasonably believed by the Bank to be finally and unconditionally collected" or "collected funds initially deposited … that are no longer subject to reversal." *Id.* The Agreement permits Plaintiffs, as Borrowers, to "at any time revoke the forgoing Governmental Instructions upon twenty (20) Business Days' prior written notice to the Bank and Secured Party." *Id.*

The Accounts Agreement further states that "[t]he Bank has no obligation to determine the source of payments received" in either the Commercial or Governmental Account. *Id.* at 1–2.

Section 5.1 of the Loan Agreement, titled "Loan Collections; Repayment; Borrowing Availability and Lockbox," provides, in part, the following:

> Each Borrower shall ensure that *all collections* of its respective Accounts and *all other cash payments* received by Borrower are paid and delivered directly from Account Debtors and other Persons into the appropriate Lockbox Account. The Lockbox Agreements shall provide that the Lockbox Banks immediately will transfer all funds paid into the Lockbox Accounts into the Concentration Account. Notwithstanding and without limiting any other provision of any Loan Document, *Lender shall apply, on a daily basis, all funds transferred* into the Concentration Account pursuant to the Lockbox Agreement and this Section 5.1 in such order and manner as determined by Lender. To the extent that any Accounts are collected by a Borrower or any other case payments received by such Barrower are not sent directly to the appropriate Lockbox Account but are received by such Borrower or any of its Affiliates, such collections and proceeds shall be held in trust for the benefit of Lender and immediately remitted … in the form received, to the appropriate Lockbox Account for immediate transfer to the Concentration Account. … All funds transferred to the Concentration Account for application to the Obligations under the Loan shall be applied to reduce the Obligations under the Loan.

ECF No. 20-1 at 22 (emphasis added).

Plaintiffs do not specify into which account (Commercial or Government) the payroll advance from the State of Nebraska was deposited. Nor do Plaintiffs take issue with Defendants' assertion that Section 5.1 of the Loan and Security Agreement and Paragraph 2 of the Accounts Agreement (governing the Commercial Account) apply. *See* ECF No. 23 at 2. In such case, based on the plain language of the contract, Plaintiffs have not sufficiently alleged that Defendants were in breach when they swept the $3.5 million on March 21, 2018. Further, even if the funds were deposited in a Governmental Account, under Paragraph 3 of the Accounts Agreement, Plaintiffs have not plausibly alleged that Defendants deviated from the contractual agreement.

Accordingly, Plaintiffs' claim for breach of contract is dismissed.

**2. Fraudulent Misrepresentation**

Plaintiffs assert that Defendants' actions sweeping the $3.5 million payroll advance amounts to fraud, because Defendants allegedly made the sweep despite representations to the contrary. ECF No. 22 at 8–9. Plaintiffs point to a letter sent by Defendants on February 27, 2018, and purported representations by Defendant Heller, as the basis for their fraud claim. *Id.*

Defendants argue that the February 27 letter sent to Plaintiffs did not make any false representations; instead, they merely confirmed that the funds in Plaintiffs' accounts would continue to be swept daily and applied against the loan balance.[6] ECF No. 21 at 13. Further, they assert that any allegations made against Defendant Heller lack particularity and are otherwise barred by the plain language of the loan documents and the Maryland Credit Agreement Act, which both require any loan modifications to be made in writing. ECF No. 23 at 3–4.

As noted above, a plaintiff must survive a heightened pleading standard in order to state a claim for fraud, and such allegations must be made with particularity. Fed. R. Civ. Pro. 9(b). To state a claim for fraud based on an affirmative misrepresentation, a plaintiff must allege that:

> (1) a representation made by a party was false; (2) its falsity was either known to the party or made with such reckless indifference to the truth to impute knowledge; (3) the misrepresentation was made for the purpose of defrauding some other person; (4) that person reasonably acted in reliance upon the misrepresentation with full belief in its truth, and he would not have done the thing from which damage resulted had it not been made; and (5) the person so acting suffered damage directly resulting from the misrepresentation.

*Todd v. Xoom Energy Maryland, LLC*, No. GJH-15-154, 2016 WL 727108, at *9 (D. Md. Feb. 22, 2016) (quoting *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 545-46 (4th Cir. 1987)).

---

[6] Defendants assert that the representative February 27 letter supplied by Plaintiffs, ECF No. 20-5, was "not directed toward the Plaintiffs and do[es] not discuss Plaintiffs, their accounts, or the Loans whatsoever." ECF No. 21 at 12. The letters appear to be addressed to sister entities of Plaintiffs based in New Jersey. Defendants then provide their own copy of the letter apparently referenced in the Amended Complaint. *See* ECF No. 21-2. Plaintiffs do not object to this assertion or Defendants' introduction of the letter in their Response to Defendants' Motion to Dismiss. ECF No. 22. Thus, having reviewed the letters, the Court agrees that Plaintiffs' letter appears to have been appended in error. The Court will refer to the copy of the letter as provided by Defendants.

Here, Plaintiffs argue that, in the letter, Defendants "made representations" that "accounts would not be closed or swept until March 27, 2018," although "all funds" were swept on March 21, 2018. *See, e.g.*, ECF No. 20 ¶ 64. The letter in question, however, does not appear to support these claims. *See supra* note 6. Instead, the letter "demands immediate payment in full" of the obligations under the Loan and Security Agreement and "provides notice" that approximately $3.5 million held in the Lockbox Accounts had already been applied to repay the Plaintiffs' loan obligations. ECF No. 21-2 at 2–3. There is nothing in the Court's reading of the letter that would suggest that funds would not continue to be swept on a daily basis, or that they would not be swept until March 27, 2018.

Further, Plaintiffs allege in their Amended Complaint that Defendants made the sweep "in direct contradiction" to "representations by Heller," who "stated that accounts would not be closed or swept until March 27, 2018." ECF No. 20 ¶ 51. Plaintiffs add that such "representations were false when they were made and Heller continued to engage in bad faith negotiations," and that Defendants "knew that at that time that the representations were false and/or were made recklessly without knowledge of their truth." *See, e.g.*, ECF No. 20 ¶¶ 65–66.

Of course, the Court is mindful that, while the "requirement of 'particularity' does not require the elucidation of every detail of the alleged fraud," it "does require more than a bare assertion that such a cause of action exists. *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). This is especially true where, as here, allegations of fraud appear to contradict the text of the loan agreements and written communications sent by Defendants. *See Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 634 (D. Md. 2009) (holding "a party does not have a right to rely upon 'allegedly fraudulent statements made in the face of plainly

contradictory contractual language'"). In such light, the Court does not find that Plaintiffs have met this bar.

Further, the terms of the parties' agreement and Maryland law bar oral modifications. For instance, the Loan and Security Agreement states that "Borrowers and Lender may later modify their agreement, but it must also be in writing." ECF No. 20-1 at 59. The February 27 letter provides a similar disclaimer. *See* ECF No. 21-2 at 4.

Under the Maryland Credit Agreement Act, a credit agreement is not enforceable unless it: "(1) is in writing; (2) expresses consideration; (3) sets forth the relevant terms and conditions of the agreement; and (4) is signed by the person against whom enforcement is sought." *Knight v. Manufacturers & Traders Tr. Co.*, 84 F. Supp. 3d 436, 444 (D. Md. 2015) (citing Md. Code Ann., Cts. & Jud. Proc., § 5–408). Thus, where "the alleged promise was not in writing, it is not enforceable." *Kuechler*, 602 F. Supp. 2d at 632. Even if Defendant Heller did make oral representations that the sweep would be delayed, as alleged by Plaintiffs, such representations would not be binding.

As such, Defendants' claim for fraud is dismissed.

### C. Request for Accounting

In Count 69 of the Complaint, Plaintiffs seek an accounting based on Defendants' "refus[al] to provide access to how the seized funds were allocated." ECF No. 20 ¶ 468. In support of their request, they point to Section 8 of the Accounts Agreement with Defendants, which states that "all regular monthly account statements covering deposits to and withdrawals from the Accounts" and "such other information with respect to the Accounts as [Plaintiffs] may reasonably request." *Id.* ¶ 467; ECF No. 20-2 at 4.

However, as Defendants note, Maryland law recognizes accounting as a separate cause of action only "in limited exceptional circumstances." *1899 Holdings, LLC v. 1899 Liab. Co.*, No. CIV. CCB-12-297, 2013 WL 142303, at *4 (D. Md. Jan. 8, 2013), *aff'd*, 568 F. App'x 219 (4th Cir. 2014); *see Goldstein v. F.D.I.C.*, No. CIV.A. ELH-11-1604, 2012 WL 1819284, at *13 (D. Md. May 16, 2012). Instead, a demand for an accounting is generally considered "a remedy to another cause of action." *1899 Holdings*, 2013 WL 142303, at *4. Consequently, when all other causes of action in a complaint are dismissed, the claim for an accounting should also be dismissed. *See id.*

Here, Plaintiffs do not address their request for an accounting in their Response to Defendants' Motion to Dismiss, and thus have failed to show why an accounting would be uniquely appropriate in this case. Nor have Plaintiffs sufficiently demonstrated why their contractual relationship with Defendants, as written in the Account Agreement, would extend to the request demanded in their Complaint. As such, this claim is denied.

### D. Leave to Amend

In their Response to Defendants' Motion to Dismiss, Plaintiffs seek leave to file an amended complaint. ECF No. 22 at 10–11. Rule 15(a) provides that a party may amend a pleading "once as a matter of course at any time before a responsive pleading is served," as Plaintiffs have already done. Otherwise, amendment is permissible "only by leave of court or by written consent of the adverse party," with leave "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend may not be provided where there is bad faith, undue prejudice to the opposing party, or futility of amendment. *See Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1980). "Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000).

15

Accordingly, the Court will deny leave to file an amended complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is granted. A separate Order follows.

Date: <u>January  18, 2023 </u>　　　　　　　　　　　　____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge